1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MANDY L. ESTEP,                          No.  2:15-cv-2647-CKD

12              Plaintiff,

13        v.                                  ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                 Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

20   under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court

21   will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion

22   for summary judgment.

23   I.        BACKGROUND

24        Plaintiff, born September 19, 1977, applied for SSI benefits on October 31, 2012, alleging

25   disability beginning September 14, 2009.  Administrative Transcript ("AT") 65, 165-85.  Plaintiff

26   alleged she was unable to work due to anxiety, posttraumatic stress disorder, depression,

27   nightmares, and back pain.  AT 166.  In a decision dated March 28, 2014, the ALJ determined

28

                                                1

that plaintiff was not disabled.[1]  AT 10-21.  The ALJ made the following findings (citations to 20

C.F.R. omitted):

> 1.      The claimant has not engaged in substantial gainful activity
> since October 31, 2012, the application date.
>
> 2.      The claimant has the following severe impairments: Lumbar
> strain/sprain with degenerative changes, personality disorder, and
> depression.
>
> 3.      The claimant does not have an impairment or combination
> of impairments that meets or medically equals the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4.      After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual functional

---

[1]      Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful
> activity?  If so, the claimant is found not disabled.  If not, proceed
> to step two.
>
> Step two:  Does the claimant have a "severe" impairment?
> If so, proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three:  Does the claimant's impairment or combination
> of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1?  If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past
> work?  If so, the claimant is not disabled.  If not, proceed to step
> five.
>
> Step five:  Does the claimant have the residual functional
> capacity to perform any other work?  If so, the claimant is not
> disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

capacity to perform a wide range of medium work as defined in 20
CFR 416.967(c). The claimant is able to lift and carry 50 pounds
occasionally, 25 pounds frequently. She can sit, stand, and walk six
hours each during a normal eight-hour workday. The claimant can
never climb ladders, ropes, or scaffolds, but can occasionally climb
ramps and stairs. She can never work around hazards, such as
moving dangerous machinery or unprotected heights, and cannot be
required to operate a motor vehicle. The claimant has sufficient
basic speaking, reading, and writing use of English, adequate to
perform simple routine and repetitive tasks with occasional public
contact.

5.      The claimant has no past relevant work.

6.      The claimant was born on September 19, 1977 and was 35
years old, which is defined as a younger individual age 18-49, on
the date the application was filed.

7.      The claimant has a limited education and is able to
communicate in English.

8.      Transferability of job skills is not an issue because the
claimant does not have past relevant work.

9.      Considering the claimant's age, education, work experience,
and residual functional capacity, there are jobs that exist in
significant numbers in the national economy that the claimant can
perform.

10.     The claimant has not been under a disability, as defined in
the Social Security Act, since October 31, 2012, the date the
application was filed.

AT 12-20.

II.     ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

disabled: (1) improperly assessed plaintiff's mental residual functional capacity ("RFC"); (2)

improperly assessed plaintiff's physical RFC; (3) improperly determined that plaintiff's testimony

was less than fully credible; (4) failed to properly consider and weigh the lay witness testimony of

plaintiff's father; and (5) improperly found plaintiff not disabled at step five based on an

erroneous RFC determination.

III.    LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on

proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

3

1   as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

2   evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

3   F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

4   mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

5   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

6   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

7   ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

8   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

9   rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

10        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

11   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

12   conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not

13   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see

14   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the

15   administrative findings, or if there is conflicting evidence supporting a finding of either disability

16   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

17   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

18   weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

19   IV.    ANALYSIS

20        A. *The ALJ did not err in Determining Plaintiff's Mental RFC*

21        Plaintiff first argues that the ALJ erred in his assessment of plaintiff's mental impairments

22   when determining plaintiff's RFC because he failed to fully and properly consider the effects of

23   plaintiff's posttraumatic stress disorder ("PTSD") and anxiety, and improperly rejected portions

24   of the opinion of Dr. Kalman, an examining psychiatrist.

25        1.  The ALJ's Consideration of PTSD and Anxiety

26        Plaintiff contends that the ALJ failed to properly consider and fully account for the impact

27   of plaintiff's diagnosed anxiety and PTSD in his RFC decision. A review of the ALJ's decision

28   demonstrates that this argument is without merit. Indeed, the ALJ specifically discussed and

1  thoroughly considered the evidence in the record regarding plaintiff's anxiety and PTSD in

2  determining plaintiff's RFC, which included evidence of medical diagnosis of both conditions,

3  medical opinion evidence regarding the impact of all of plaintiff's mental impairments, plaintiff's

4  and her father's statements regarding the impact of those impairments, and the treatment she was

5  prescribed for those conditions.  AT 13-19.  As discussed in further detail below, the ALJ

6  properly considered and weighed this evidence in reaching his RFC decision.  Accordingly, the

7  ALJ did not err in considering plaintiff's anxiety and PTSD.

8                    2.  Dr. Kalman's opinion

9          Plaintiff also argues that the ALJ improperly assessed the impact of plaintiff's mental

10  impairments because he failed to properly consider and weigh the opinion of Dr. Kalman, an

11  examining psychiatrist.

12          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

13  considering its source, the court considers whether (1) contradictory opinions are in the record,

14  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

15  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

16  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

17  rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

18  830.  While a treating professional's opinion generally is accorded superior weight, if it is

19  contradicted by a supported examining professional's opinion (e.g., supported by different

20  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

21  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

22  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

23  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

24  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

25  non-examining professional, without other evidence, is insufficient to reject the opinion of a

26  treating or examining professional.  Lester, 81 F.3d at 831.

27          Here, Dr. Kalman conducted a mental consultative examination of plaintiff on January 17,

28  2014.  AT 485-95.  Based on the results of this examination, Dr. Kalman prepared a medial

source statement for plaintiff regarding the impact plaintiff's mental impairments had on her

workplace functioning.  AT 490-93.  In that statement, Dr. Kalman opined that plaintiff's mental

impairments imposed mild limitations, meaning performance would be precluded for 5 to 9

percent of an 8-hour workday, on her ability to: remember locations and work-like procedures;

understand and remember very short and simple repetitive instructions or tasks; carry out very

short and simple instructions or tasks; perform activities within a schedule or maintain regular

attendance; make simple work-related decisions; ask simple questions; respond appropriately to

changes in the work setting; and travel in unfamiliar places using public transportation.  AT 490-

92.  He opined further that plaintiff had marked limitations, meaning performance would be

precluded for 15 to 49 percent of an 8-hour workday, in the ability to: understand, remember, and

carry out detailed instructions; maintain attention and concentration for extended periods such as

2 hour segments; work in coordination with others; complete a normal workday without

interruptions from psychologically based symptoms and perform at a consistent pace with an

unreasonable number and length of breaks; interact appropriately with the general public; and get

along with coworkers.  AT 490-91.  Dr. Kalman also opined that plaintiff had extreme limitations,

meaning performance would be precluded for 50 percent or more of an 8-hour workday, in the

ability to accept instructions and respond appropriately to criticism from supervisors.  AT 491.

He noted further that unruly or demanding customers, production demands or quotas, demand for

precision, and the need to make quick and accurate independent decisions on a consistent basis

would exacerbate the symptoms of plaintiff's mental impairments.  AT 492.  However, he also

noted that plaintiff would not be a person likely to have exacerbation from a "routine, repetitive,

simple, entry-level job."  Id.  Finally, Dr. Kalman estimated that plaintiff would miss 5 or more

days per month because of her impairments or treatment of those impairments.  Id.

As an initial matter, the ALJ agreed with and adopted Dr. Kalman's opinion that plaintiff

was only capable of work involving simple and repetitive tasks given her limitations regarding

that aspect of mental functioning because that opinion was consistent with the other medical

opinions and objective medical evidence in the record.  AT 18.  However, the ALJ rejected the

marked-to-extreme limitations Dr. Kalman opined with regard to all other aspects of plaintiff's

mental functioning.  The ALJ discounted those portions of Dr. Kalman's opinion based on the following rationale:

> Dr. Kalman's opinion of extreme or marked limitation in many functional areas is not supported by the medical treatment record or other medical opinions.  The claimant appears to have given a dramatically different presentation to Dr. Kalman than to Dr. Torres [*sic*], and the mental health treatment record supports Dr. Torres' [*sic*] modest limitation.  However, interpreting the evidence as a whole in a light most favorable to the claimant, the undersigned finds that the claimant is limited to work involving simple routine and repetitive tasks with occasional public contact.

AT 18.  These were specific and legitimate reasons for discounting Dr. Kalman's opinion that were supported by substantial evidence from the record.

First, the ALJ properly cited to the fact that Dr. Kalman's opinion was inconsistent with the generally unremarkable objective medical findings contained in plaintiff's mental treatment notes and the other medical opinion evidence in the record.  See Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir. 2012); Meanel, 172 F.3d at 1114 (an ALJ may discount a treating or examining physician's opinion that is "conclusory and unsubstantiated by relevant medical documentation"); Andrews, 53 F.3d at 1041 (citing Magallanes, 881 F.2d at 751) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").  Dr. Torrez, another examining psychiatrist, conducted an independent comprehensive psychiatric evaluation of plaintiff on March 9, 2013, which consisted of a review of available records and a mental status examination.  AT 452-59.  Based on this examination, Dr. Torrez opined that plaintiff had no limitations with regard to following simple or complex instructions and one or two step simple repetitive tasks, and was "mildly limited" with respect to the ability to perform complex tasks, maintain adequate attention and concentration, adapt to changes in the job routine, withstand the stress of a routine workday, and interact appropriately with coworkers, supervisors, and the public on a regular basis.  AT 458.  Dr. Torrez opined further that plaintiff was also "mildly to moderately limited" with regard to the ability to adapt to

1  changes, hazards, or stressors in the workplace.  AT 459.  Such mild-to-moderate findings

2  directly conflicted with the more severe limitations opined by Dr. Kalman with regard to those

3  areas of mental functioning.  It was the ALJ's role to determine the relative credibility of Dr.

4  Kalman's and Dr. Torrez's opinions and resolve the conflict between their findings.  Batson v.

5  Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

6       The ALJ's resolution of the conflict between these two physicians' opinions was

7  reasonable, especially in light of the other medical evidence in the record.  For instance, Dr.

8  Rahman, a treating psychiatrist, filled out a mental disorder questionnaire form on January 31,

9  2013, wherein she noted that plaintiff did not need assistance with activities of daily living and

10  had no deficits in social functioning, basic task completion, and concentration.  AT 414-18.

11  Similarly, plaintiff's treating mental health records generally reflect more moderate symptoms

12  that were either stabilized or improved with medications.  E.g., AT 319, 384-86, 395, 463-64,

13  483.  Such findings conflicted with the marked-to-extreme limitations opined by Dr. Kalman, and

14  were generally consistent with the more moderate opinion of Dr. Torrez.  While this evidence

15  indicates that it would have been reasonable for the ALJ to discount the marked-to-extreme

16  limitations contained in Dr. Kalman's opinion in full and adopt the limitations opined by Dr.

17  Torrez, he still gave plaintiff the benefit of the doubt and found her mental impairments to be

18  more limiting than what Dr. Torrez opined.  AT 13-14.

19       Furthermore, as the ALJ noted in his decision, plaintiff's statements to Dr. Kalman

20  regarding the impact her mental impairments had on her daily activities varied greatly from the

21  statements she made to Dr. Torrez and her other examining and treating physicians.  AT 18.

22  Plaintiff reported to Dr. Kalman that she had no friends, experienced hallucinations and

23  delusions, and socially isolated herself except for her attendance at Narcotics Anonymous

24  meetings.  AT 485-88.  However, she reported to Dr. Torrez and her other mental health

25  physicians that she attended meetings and sought social support, spent time with family, attended

26  her cousin's wedding, and had two good friends with whom she went out to lunch, attended bible

27  study, talked on the phone, and went on walks.  AT 457, 478, 480.  Accordingly, it was

28  reasonable for the ALJ to determine that Dr. Torrez's opinion, which was based in part on

8

1   plaintiff's statements to her that were consistent with plaintiff's statements to other physicians in

2   the record, was entitled to greater weight than the opinion of Dr. Kalman, which was based in part

3   on statements that were only made to Dr. Kalman, conflicted with what plaintiff told her other

4   physicians, and indicated that plaintiff was more impaired than what the other evidence in the

5   record suggests.

6        In sum, the ALJ provided multiple specific and legitimate reasons supported by

7   substantial evidence in support of his decision to discount the aspects of Dr. Kalman's opinion he

8   specified in his decision.

9        B.  *The ALJ did not err in Determining Plaintiff's Physical RFC*

10        Second, plaintiff argues that the ALJ erred in his RFC determination that plaintiff could

11   perform the exertional demands of medium work and lift and carry 50 pounds occasionally and

12   25 pounds frequently given the evidence in the record indicating that plaintiff suffered from a

13   severe lumbar strain/sprain with degenerative changes.  This argument is without merit.

14        Dr. Schwartz, who provided the sole opinion in the record based on an examination of

15   plaintiff's physical impairments, opined that plaintiff had no exertional or non-exertional physical

16   limitations beyond a single limitation to frequent stooping.  AT 449.  Similarly, Dr. Pan and Dr.

17   Sohn, two non-examining physicians who provided the only other opinions in the record

18   regarding plaintiff's physical impairments, opined that plaintiff had no severe physical

19   impairment and no physical functional limitations.  AT 73, 87.  In short, all of the medical

20   opinions in the record regarding the impact of plaintiff's physical impairments indicate that

21   plaintiff's physical impairments imposed few if any limitations on plaintiff's physical workplace

22   functioning.  Despite this substantial medical opinion evidence, it appears that the ALJ gave

23   plaintiff the benefit of the doubt in finding that she was limited to work at a medium exertional

24   level with some additional exertional and non-exertional limitations as a result of her physical

25   impairments.   AT 13.

26        Nevertheless, plaintiff argues that the physical limitations contained in the ALJ's RFC

27   determination were not sufficiently severe in light of the objective medical findings in the record

28   indicating that plaintiff suffered from a degenerative spinal condition and chronic back pain.

9

1   However, a review of the objective medical evidence in the record regarding plaintiff's physical

2   impairments belies plaintiff's argument.  X-rays of plaintiff's spine from 2011 and 2013 show

3   that while plaintiff had degenerative disc space narrowing between her discs at L4 and L5, that

4   condition was only "moderate" in nature and did not significantly worsen during the period

5   between those two x-rays.  AT 347, 537.  Similarly, while the record shows that plaintiff suffered

6   back pain, it also demonstrates that her treating physicians provided only conservative treatment

7   for that condition in the form of medication and recommendations to engage in home exercise.

8   E.g., AT 512, 518, 520.  Finally, plaintiff's treatment records contain several reports by plaintiff

9   to her treating physicians that she engaged in activities such as swimming for an hour every day,

10  walking, and horseback riding, which further undermine plaintiff's contention that her physical

11  impairments caused limitations greater than those contained in the ALJ's RFC determination.  AT

12  236, 512.

13         Accordingly, the ALJ's RFC determination that plaintiff's physical impairments caused

14  her moderate exertional and non-exertional limitations was reasonable in light of the medical

15  opinion evidence, objective medical findings, and plaintiff's statements to her treating physicians.

16         C. *The ALJ did not err in Finding Plaintiff's Testimony Less Than Fully Credible*

17         Third, plaintiff argues that the ALJ erred in finding plaintiff's pain and symptom

18  testimony less than fully credible because he failed to provide clear and convincing reasons in

19  support of that adverse credibility determination.

20         The ALJ determines whether a disability applicant is credible, and the court defers to the

21  ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

22  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

23  explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

24  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

25  supported by "a specific, cogent reason for the disbelief").

26         In evaluating whether subjective complaints are credible, the ALJ should first consider

27  objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

28  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

10

1   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

2   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

3   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

4   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

5   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

6   1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13.  Work records,

7   physician and third party testimony about nature, severity and effect of symptoms, and

8   inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

9   Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

10  debilitating medical problem may be a valid consideration by the ALJ in determining whether the

11  alleged associated pain is not a significant non-exertional impairment.  See Flaten v. Secretary of

12  HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

13  observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

14  substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

15  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

16  reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v.

17  Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

18      Here, the ALJ found plaintiff's testimony less than fully credible for the following

19  reasons: (1) plaintiff's treatment records show her pain medications had been eliminated over

20  time, which conflicted with her claims regarding the limitations stemming from her physical

21  impairments; (2) plaintiff's reported daily activities conflicted with her claims of disabling

22  symptoms; (3) plaintiff made conflicting statements to her health care providers regarding the last

23  time she used illicit drugs; and (4) the medical evidence in the record does not generally support

24  the severity, intensity, or frequency of the symptoms she alleged.  These were clear and

25  convincing reasons for discounting plaintiff's testimony that were supported by substantial

26  evidence in the record.

27      First, the ALJ properly noted that while plaintiff listed pain medication in her disability

28  report, in recent medication lists, pain medications had been eliminated, which "suggests that her

1   treating doctors did not find sufficient correlation between symptoms and objective findings to

2   justify continued prescription of pain medications." AT 15.  The fact that plaintiff's physicians

3   determined it unnecessary for plaintiff to continue on pain medications undermined her claims

4   that her physical impairments caused her substantial physical limitations.  See Parra v. Astrue,

5   481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative

6   treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.");

7   Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that a

8   condition that can be controlled or corrected by medication is not disabling for purposes of

9   determining eligibility for benefits under the Act); Tommasetti, 533 F.3d at 1039-40 (reasoning

10  that a favorable response to conservative treatment undermines complaints of disabling

11  symptoms).  Accordingly, the ALJ's consideration of this fact was proper.

12          Second, the ALJ cited to the fact that plaintiff's reported daily activities conflicted with

13  her claims of disabling symptoms.  "While a claimant need not vegetate in a dark room in order to

14  be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports

15  participation in everyday activities indicating capacities that are transferable to a work setting . . .

16  Even where those activities suggest some difficulty functioning, they may be grounds for

17  discrediting the claimant's testimony to the extent that they contradict claims of a totally

18  debilitating impairment."  Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted);

19  see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered

20  claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and

21  boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan

22  v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding

23  claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his

24  friend's child" was a specific finding sufficient to discredit the claimant's credibility).

25          Here, the ALJ noted that plaintiff able to cook, shop, do household chores, manage her

26  own transportation, and care for her own personal hygiene without assistance.  AT 17, 457, 487.

27  Plaintiff also reported that she regularly attended Narcotics Anonymous meetings, sought social

28  support, spent time with family, rode horses, attended her cousin's wedding, and had two good

1   friends with whom she went out to lunch, attended bible study, talked on the phone, and went on

2   walks.  AT 236, 457, 478, 480.  The ALJ properly cited to these activities to support his

3   determination that plaintiff's claims regarding the extent of her symptoms were not fully credible.

4       Third, the ALJ appropriately determined that plaintiff's conflicting statements to her

5   physicians regarding when she last used illicit drugs undermined her overall credibility.  See, e.g.,

6   Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (upholding ALJ's adverse credibility

7   determination based on the claimant's inconsistent statements regarding her alcohol and drug

8   use); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use ordinary

9   techniques of credibility evaluation, such as inconsistent statements); Bunnell v. Sullivan, 947

10  F.2d 341, 346 (9th Cir. 1991) (ALJ may discredit claimant's allegations based on inconsistencies

11  in the testimony or on relevant character evidence).  Indeed, the record shows that plaintiff had

12  provided her treating and examining physicians drastically conflicting dates regarding the last

13  time she had used cocaine or other illicit substances.  AT 447, 454, 476, 486.  This was

14  substantial evidence in support of the ALJ's reasoning.

15      Finally, the ALJ also determined that plaintiff's claims of disabling symptoms conflicted

16  with the weight of the objective medical evidence in the record.  The record contains substantial

17  evidence for this assertion as the credible medical opinion evidence indicates that plaintiff had

18  limitations far less severe than what she alleged.  E.g., AT 416-18, 446-49, 452-61.  Although

19  lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective

20  symptom testimony, it is nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d

21  at 681.  Accordingly, the ALJ did not err in providing this reason for discounting plaintiff's

22  testimony in light of the other clear and convincing reasons discussed above.

23      Because the ALJ provided multiple clear and convincing reasons to support his adverse

24  credibility determination, each of which was supported by substantial evidence from the record,

25  that determination was not made in error.

26  ////

27  ////

28  ////

1   D.  *The ALJ did not Commit Prejudicial Error in Considering Plaintiff's Father's Lay*
2       *Testimony*

3       Fourth, plaintiff argues that the ALJ improperly discounted the lay witness testimony of
4   her father without providing germane reasons for doing so that were specific to that witness.
5   "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to
6   work is competent evidence, and therefore cannot be disregarded without comment."  Nguyen v.
7   Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th
8   Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily
9   activities are competent to testify to condition).  "If the ALJ wishes to discount the testimony of
10  the lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at
11  919.  Nevertheless, the ALJ is not required "to discuss every witness's testimony on a[n]
12  individualized, witness-by-witness basis."  Molina, 674 F.3d at 1114.  Indeed, while the
13  applicable regulations require "the ALJ to consider testimony from family and friends submitted
14  on behalf of the claimant," they "do not require the ALJ to provide express reasons for rejecting
15  testimony from each lay witness."  Id. (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)).
16  "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need
17  only point to those reasons when rejecting similar testimony by a different witness."  Molina, 674
18  at 1114.

19      When the ALJ provides clear and convincing reasons for discounting a claimant's
20  testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the
21  ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for
22  rejecting the third-party lay witness's testimony.  Valentine v. Comm'r Soc. Sec. Admin., 574
23  F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114.  Furthermore, even when the ALJ
24  errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is
25  harmless if that layperson's testimony largely reflects the limitations described by the claimant
26  and the ALJ provides clear and convincing reasons for discounting the claimant's testimony,
27  because the layperson's testimony in such a circumstance is "inconsequential to the ultimate
28  nondisability determination in the context of the record as a whole."  Molina, 674 F.3d at 1122

14

1    (quotation marks omitted).

2            Here, the ALJ summarized the third-party statement plaintiff's father in detail, clearly

3    indicating that he considered the information.  AT 14, 19.  Moreover, plaintiff's father's report

4    essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided

5    specific, clear and convincing reasons for discounting plaintiff's testimony, which are equally

6    germane to this third-party testimony.  As such, any error in not explicitly restating or

7    incorporating by reference the reasons given for discounting plaintiff's testimony with respect to

8    this third party statement was harmless and remand is not warranted.  See Molina, 674 F.3d at

9    1115-22.

10           E.  *The ALJ did not err in Finding Plaintiff Capable of Other Work at Step Five*

11           Finally, plaintiff argues that the ALJ erred at step five by relying on vocational expert

12   ("VE") testimony that lacked evidentiary value because it was based on improper hypothetical

13   questions that failed to include all of plaintiff's functional limitations.

14           An ALJ may pose a range of hypothetical questions to a vocational expert, based on

15   alternate interpretations of the evidence.  However, the hypothetical that ultimately serves as the

16   basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

17   determination, must account for all of the limitations and restrictions of the particular claimant

18   that are supported by substantial evidence in the record as a whole.  Bray v. Comm'r of Soc. Sec.

19   Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the

20   claimant's limitations, then the expert's testimony has no evidentiary value to support a finding

21   that the claimant can perform jobs in the national economy."  Id. (citation and quotation marks

22   omitted).  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that

23   are not supported by substantial evidence."  Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir.

24   2006).  Furthermore, as the Ninth Circuit Court of Appeals has observed, an ALJ may synthesize

25   and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to

26   the vocational expert) without repeating each functional limitation verbatim in the RFC

27   assessment or hypothetical.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008)

28   (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately

1   captured restrictions related to concentration, persistence, or pace, because the assessment was

2   consistent with the medical evidence).

3           Plaintiff asserts that because the ALJ failed to properly evaluate the medical evidence and

4   find plaintiff's and her father's testimony credible, the hypotheticals the ALJ posed to the VE

5   based on the limitations contained in his RFC determination were improper as they did not reflect

6   all of plaintiff's functional limitations.  This argument, however, lacks merit because, for the

7   reasons stated above, the ALJ properly evaluated the medical evidence, both opinion evidence

8   and objective findings, and gave proper reasons for finding plaintiff's and her father's testimony

9   regarding the impact of her impairments not fully credible.  Because the ALJ found plaintiff not

10  credible, he was not required to include any of plaintiff's alleged limitations beyond those already

11  included in the RFC determination.  Furthermore, the ALJ posed hypotheticals to the VE that

12  were based on the limitations outlined in the ALJ's RFC determination, which were supported by

13  substantial evidence from the record.  Therefore, plaintiff's argument is without merit.

14  V.      <u>CONCLUSION</u>

15          For the reasons stated herein, IT IS HEREBY ORDERED that:

16          1.  Plaintiff's motion for summary judgment (ECF No. 13) is denied;

17          2.  The Commissioner's cross-motion for summary judgment (ECF No. 14) is granted;

18  and

19          3.  Judgment is entered for the Commissioner.

20  Dated:  November 28, 2016

21                                                  _____
                                                    CAROLYN K. DELANEY
22                                                  UNITED STATES MAGISTRATE JUDGE

23      11 estep2647.ss

24

25

26

27

28